Freeman, J.,
delivered the opinion of the court.
This suit is brought by defendant in error to recover damages for failure to deliver a lot of hogs received by the railroad company to be transported to Chattanooga. The contract to carry the hogs is stated in the declaration, and the breach on which the liability is predicated in the first count, is alleged to be failing to deliver in a reasonable time, as the carrier had undertaken to do.
The second count is for failure to deliver the hogs in good condition, alleging they were received by the company to be delivered to plaintiff at Chattanooga in good condition.
The third count is for failure to deliver the hogs at all in Chattanooga. The fourth count is for failure to deliver in a reasonable time and in good condition, as the carrier had undertaken, and alleges that defendant had so conducted that the hogs were greatly damaged in the carriage for want of due and proper care on part of the road. The other count is for failure to deliver thirty-one hogs received by defendant to be safely carried and safely delivered, and alleges that he so conducted himself in said carriage of the hogs that they died while in charge of defendant for want of proper care on the part of the company.
Defendant pleads not guilty as alleged, and second, *273 that defendant did not undertake in manner and form as plaintiff alleged.
The facts are, that defendant in error, in the winter of 1868, shipped a large number of hogs from Shelby-ville, Stephenson and other points on the road for Chattanooga, and on their arrival at that place thirty-six of the hogs were dead. A portion of the cars were delayed on the route so that a portion of the hogs in said cars had lost some ten or fifteen pounds per head.
Several questions are presented in argument and urged for reversal of the judgment rendered in this case. 1. The court charged the jury that the defendant was bound to deliver the hogs at the point of destination within a reasonable time, unless prevented from such delivery by an act of God or the public enemy; the degree of responsibility that attaches to a common carrier being that of an insurer against all loss, except such as arises from the causes above named. It is insisted that the above rule is correct, when applied to an entire failure to deliver, or to a loss of the property, but does not apply to the question of mere delay in the delivery, when the property reaches its ultimate destination.
There is a well settled distinction in the two cases. In case of damages resulting from mere delay the rule is thus stated in note to Angelí on the Law of Carriers, p. 293: “ In respect to the time of delivery of the goods, a common carrier is responsible only for the exertion of due diligence, and he may excuse delay in delivery by accident or misfortune, although *274 not inevitable. It is enough that be uses proper endeavors to prevent delay. In other words, the principle upon which the extraordinary responsibility of common carriers is founded, does not require that that responsibility should be extended to the time occupied in the transportation: the danger of robbery or collusion and fraud has no application to such case,” — for which he cites Parsons v. Hardy, 14 Wen. R., 214. In the text, sec. 289, the rule is thus stated: “But if by any accident or misfortune, not amounting to the act of God or the act of the public enemy, the transportation of the goods is obstructed and delayed, the carrier will not be answerable for the delay o occasioned, if he has used a reasonable degree of exertion and dilligence in the transportation.” And he adds: “ Suppose a canal boat has been retarded or obstructed in its voyage by reason of any accident, not amounting to an act of God, as by the disordered condition of some lock, in such case the carrier will not be liable for any damage occasioned to the shipper thereby, if the goods finally arrive in safety, unless he has been guilty of negligence.” These principles are unquestionably correct and well sustained by authority, and we hold his Honor erred in his charge on this question.
2. It is insisted that the court erred in charging the jury on the question of the effect of a notice that live stock should be received and shipped by defendant at the risk of the owner. This notice seems to have been printed in the local rules for the government of the company, and posted up in the offices of the *275 company, and is shown to have been known by the shipper, but no special contract made with him on this subject, unless notice of this rule shall be held to create one. The court charged on this question, “that a notice in their local printed rules, even if known to the shipper, would not exempt the road from the liability indicated in the previous part of his charge, unless there was a special contract made with the shipper to this effect, and then such contract would control the question of liability.” This a question on which much diversity of judicial opinion has existed both in England and America. The contradictory decisions on this question, and consequent confused state of the law on the subject, produced the statute of 2 Geo. 4 and 1 ¥m, 4, c. 68, called the Common Carriers’ Act, which settles and defines the rule in England on this question. See Addison on Contracts, 505, ed. 1857. The principal may now be considered settled by a great preponderance of authority both in England and America, that the carrier may by express contract, that is, by agreement assented to by the shipper, limit his common law liability, as an insurer, against everything but loss by act of God or public enemies, to a more restricted liability. How far such restrictions by contract are to be upheld by the courts, it is not necessary for us to decide in this case, as the only question perhaps fairly raised by the pleadings and proof, is the one of negligence and delay in time in which the carriage was made, or negligence in taking care of the stock on the way, and loss as the result of such negligence. We have laid down the *276 rule on this question of negligence in the previous part of this opinion, and do not feel inclined to decide the other question until it shall be more distinctly presented.
The terms of the notice insisted on by the road, that live stock should be shipped at the risk of the owner, could not be fairly construed, even if assented to by shipper, into an exemption from liability from damage, the result of negligence on part of the road. In the language of the Supreme Court of Pennsylvania, in the case of Pence v. McClosky, 23 Penn., 526, cited in note to Red. on Rail., vol. 2, p. 90, “assuming that a public company of carriers may contract for other exemption from liability than those allowed by law, still such a contract will not exempt from liability for gross negligence,” and we add here, that the epithet “gross” does not add to the strength of the idea, but that gross negligence means simply whatever neglect of the duties imposed upon a carrier, by the fair meaning of his contract, that shall be the cause of the loss or damage complained of, that is, that the party is entitled to recover for whatever of loss or damage may have accrued as the legitimate result of negligence on the park of the carrier.
His Honor should have charged the. jury on this question then, that if the injury complained of was the result of negligence and failure of the carrier to transport the goods, as by the terms of his contract the law required him to do, in a reasonable time, and with due and proper care, and presented no legal or valid excuse, as hereinbefore indicated, for his fail *277 ure, he was liable, and that even though the stock was shipped “at owner’s risk,” it would not excuse negligence of the undertaking of the defendant in this respect — the words “at owner’s risk,” even if inserted in a contract of the kind, would only cover the ordinary and known risks of transportation by the usual means, and in reasonable time, but not for delays or neglect of proper care in such transportation on the part of the railroad.
There are other propositions of his Honor that need not be discussed that are subject to criticism, but as the case must be reversed we need not notice them in this opinion.
The judgment will be reversed and the case remanded for a new trial.